ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL IV**

| | | |
|---|---|---|
| **PROFESSIONAL ASPHALT, LLC**<br>RECURRENTE(S)<br><br><br>V.<br><br><br>**MUNICIPIO AUTÓNOMO DE CATAÑO**<br>RECURRIDA(S)<br><br><br>**MIGUELITO ASPHALT, INC.**<br>LICITADOR AGRACIADO | **KLRA202400505** | *REVISIÓN DE DECISIÓN ADMINISTRATIVA* procedente de la Junta de Subastas del Municipio de CATAÑO<br><br><br>Caso Núm.<br>Serie 2024-2025<br><br><br>Sobre:<br>Adjudicación de Subasta (Adquisición de Asfalto, Repavimentación y Escarificación) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand, y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente

**S E N T E N C I A**

En San Juan, Puerto Rico, hoy día 27 de noviembre de 2024.

Comparece ante este Tribunal de Apelaciones, **PROFESSIONAL ASPHALT, LLC** (**PROFESSIONAL ASPHALT**) mediante *Solicitud de Revisión Judicial* incoada el 13 de septiembre de 2024. En su recurso, nos solicita que revisemos la adjudicación de buena pro emitida el 3 de septiembre de 2024 por la **JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE CATAÑO** (**JUNTA DE SUBASTAS**).[1] En dicha determinación, la **JUNTA DE SUBASTAS** confirió la *Subasta General Núm. 17 Serie 2024-2025* a favor de **MIGUELITO ASPHALT, INC.** (**MIGUELITO ASPHALT**). Esta Subasta se celebró con el propósito de la adquisición de asfalto, repavimentación, escarificación y otros servicios.

---

[1] El 4 de septiembre de 2024, se notificó y archivó en autos, así como remitió por correo certificado esta determinación administrativa.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

El 2 de mayo de 2024, en el periódico El Nuevo Día, la JUNTA DE SUBASTAS publicó una invitación a subasta para la adquisición de asfalto y otros servicios. En dicha invitación, se especificó que sería compulsorio participar de una reunión pre-subasta a efectuarse el 13 de mayo de 2024; y las licitaciones o propuestas serían recibidas hasta el 22 de mayo de 2024 a las 9:30 de la mañana.[2]

A la reunión pre-subasta, asistieron Puerto Rico Asphalt, LLC; MIGUELITO ASPHALT, INC.; Super Asphalt Pavement, Corp.; PR Disposal 4 Contractor; y PROFESSIONAL ASPHALT. Así las cosas, el 31 de mayo de 2024, se reunió la JUNTA DE SUBASTAS y deliberaron sobre las adjudicaciones de la subasta general serie 2024-2025.[3]

El 1 de agosto de 2024, la JUNTA DE SUBASTAS suscribió su misiva sobre la adjudicación de la referida subasta. En la misma, informó haberse reunido, teniendo el quórum requerido, y adjudicado todos los renglones de la subasta a MIGUELITO ASPHALT "en el mejor interés del Municipio velando, en todo momento, por una sana administración pública".[4] Esta comunicación fue depositada en el servicio postal el 2 de agosto de 2024.[5]

El 12 de agosto de 2024, PROFESSIONAL ASPHALT acudió ante este foro intermedio revisor mediante una *Solicitud de Revisión Judicial* al cual se le asignó el alfanumérico: KLRA202400443. Posteriormente, el 23 de septiembre de 2024, se decretó *Sentencia* desestimando el recurso por falta de jurisdicción y devolviendo el caso a la JUNTA DE SUBASTAS para atemperar su notificación sobre la adjudicación de la subasta al ordenamiento jurídico.

---

[2] Apéndice de la *Solicitud de Revisión Judicial*, págs. 40- 52.
[3] *Íd.*, págs. 58- 69.
[4] *Íd.*, págs. 70- 72.
[5] *Íd.*, pág. 73.

Consecutivamente, el 3 de septiembre de 2024, la **JUNTA DE SUBASTAS** refrendó un segundo escrito adjudicativo.[6] Este comunicado contiene la fecha de archivo en autos y deposito por correo certificado, así como una tabla correspondiente al análisis realizado en la cual destacó los veintiséis (26) renglones.

Inconforme con esta adjudicación, el 13 de septiembre de 2024, **PROFESSIONAL ASPHALT** compareció ante nos e imputa el(los) siguiente(s) errores:

> Erró la Junta de Subastas al emitir una notificación de adjudicación de subasta inadecuada que no cumple con los requisitos de ley y reglamento.

> Erró la Junta de Subastas al adjudicar a un postor que no es el más bajo, sin justificación alguna.

Evaluado concienzudamente el expediente del caso, hemos optado por "prescindir de términos jurisdiccionales, escritos, notificaciones o procedimientos específicos.... con el propósito de lograr su más justo y eficiente despacho". Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones.[7] Ante ello, exponemos las normas de derecho pertinentes a la controversia planteada.

- II –

- A - Adjudicación de Subastas Municipales

La subasta formal y el requerimiento de propuestas (Request for Proposal- RFP) son los dos (2) vehículos procesales ordinariamente utilizados por el Gobierno, así como los municipios, para la adquisición de bienes y servicios.[8] Su objetivo principal es brindarle protección al erario mediante el acceso a la construcción de obras públicas y la adquisición de servicios de calidad para el Gobierno al mejor precio posible.[9]

---

[6] *Íd.*, págs. 1- 8.
[7] 4 LPRA Ap. XXII-B, R. 7 (B) (5).
[8] *Transporte Sonnell, LLC v. Junta de Subastas*, 2024 TSPR 82; 214 DPR ____; *Puerto Rico Asphalt v. Junta*, 203 DPR 734, 737 (2019) (sentencia).
[9] *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021).

Actualmente, nuestro ordenamiento jurídico no contiene un estatuto uniforme que regule la subasta gubernamental dirigida a la adquisición de bienes y servicios. Por consiguiente, corresponde a cada agencia ejercer su poder de reglamentación para establecer las normas que habrán de regir sus procedimientos de subasta.[10]

En el caso de los municipios, tanto las subastas que adjudique una Junta de Subastas Municipal como el requerimiento de propuestas están reguladas por la Ley Núm. 107 de 14 de agosto de 2020, según enmendada, conocida como el *Código Municipal de Puerto Rico* (*Código Municipal*), y el *Reglamento para la Administración Municipal Núm. 8873 de la Oficina del Comisionado de Asuntos Municipales* de 19 de diciembre de 2016 (*Reglamento Núm. 8873*).[11]

El *Código Municipal de Puerto Rico*, Ley Núm. 107-2020, en su Artículo 2.038, requiere que todo municipio constituya y tenga una Junta de Subastas. Dispone, además, que el municipio establecerá un reglamento que incluirá, entre otros asuntos, las condiciones y requisitos que solicite el municipio para la adquisición de los servicios, equipos y/o suministros.[12]

Más aún, el Artículo Art. 2.040 de la Ley Núm. 107-2020 instituye que la Junta [de Subastas] entenderá y adjudicará todas las subastas que se requieran por ley, ordenanza o reglamento y en los contratos de arrendamiento de cualquier propiedad mueble o inmueble y de servicios, tales como servicios de vigilancia, mantenimiento de equipo de refrigeración y otros.[13] Así las cosas, los próximos incisos del mencionado Art. 2.040 expresan:

> *(a) Criterios de Adjudicación- Cuando se trate de compras, construcción o suministros de servicios, la Junta **adjudicará a favor del postor razonable más bajo**. En el caso de ventas o arrendamiento de bienes muebles e inmuebles **adjudicará a favor del postor más alto**. La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las*

---

[10] *ECA Gen. Contract. v. Mun. de Mayagüez*, 200 DPR 665, 672 (2018).
[11] 21 LPRA § 7001 y ss. *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525 (2019).
[12] 21 LPRA § 7214.
[13] 21 LPRA § 7216.

*especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta.* ***La Junta podrá adjudicar a un postor que no sea necesariamente el más bajo o el más alto, según sea el caso, si con ello se beneficia el interés público. En este caso, la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación.*** *La adjudicación de una subasta será notificada a todos los licitadores certificando el envío de dicha adjudicación mediante correo certificado con acuse de recibo, o mediante correo electrónico, si así fue provisto por el licitador o licitadores. En la consideración de las ofertas de los licitadores, la Junta podrá hacer adjudicaciones por renglones cuando el interés público así se beneficie. La Junta de Subasta notificará a los licitadores no agraciados las razones por las cuales no se le adjudicó la subasta. Toda adjudicación tendrá que ser notificada a cada uno de los licitadores, apercibiéndoles del término jurisdiccional de diez (10) días para solicitar revisión judicial de la adjudicación ante el Tribunal de Apelaciones de conformidad con la sec. 7081 de este título*.

*(b) Causas para rechazar pliegos de subastas- [l]a Junta de Subasta podrá rechazar la licitación o las licitaciones que se reciban como resultado de una convocatoria, cuando considere que el licitador carece de responsabilidad o tiene una deuda con el municipio o el Gobierno de Puerto Rico o Gobierno federal o que la naturaleza o calidad de los suministros, materiales, o equipo no se ajustan a los requisitos indicados en el pliego de la subasta, o que los precios cotizados se consideren como irrazonables o cuando el interés público se beneficie con ello.*

*(c) Garantías y fianzas- [l]a Junta requerirá al licitador las garantías que estime necesarias, a los fines de asegurar el cumplimiento del contrato y podrá fijar los demás términos de dicho contrato, que a su juicio, considere necesarios, convenientes o útiles. En casos de obras y mejoras públicas que se lleven a cabo por el proceso de subasta, el contratista, antes de firmar el acuerdo correspondiente, además de lo requerido en la sec. 7174 de este título, someterá o prestará las fianzas y garantías que le requiera la Junta para asegurar el fiel cumplimiento del contrato. Asimismo, la Junta de Subasta podrá fijar el monto de la fianza provisional para asegurar la participación del licitador en la subasta.* [...]

Por otro lado, el *Reglamento Núm. 8873, supra,* preceptúa que la adjudicación de una subasta se hará a favor del licitador que esté respaldado por un buen historial de capacidad y cumplimiento, y además reúna los siguientes requisitos:

(a) Que cumpla con los requisitos y condiciones de los pliegos de especificaciones.

(b) Que sea la más baja en precio o que[,] **aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación**.
De adjudicarse a favor de un licitador que no haya ofrecido el costo más bajo, la Junta de Subastas deberá hacer constar por escrito las razones que justifican la adjudicación. Dicha justificación escrita deberá estar firmada por los miembros de la Junta de Subasta que la favorecieron y debe permanecer en el expediente para fines de auditoria futura.[14]

El *Reglamento Núm. 8873, supra,* también detalla el procedimiento a seguir al adjudicarse la buena pro. Sobre ello, instaura que la Junta tendrá que determinar las ofertas susceptibles de ser consideradas para la adjudicación, tomando como guía las normas establecidas en el Reglamento, así como en la información del Acta de Apertura y el Informe del Recaudador.[15] Dispone, además, que *"[l]uego de hacer esa determinación preliminar, la Junta procederá a verificar en las ofertas susceptibles de ser evaluadas, cuáles han cumplido con las especificaciones y condiciones solicitadas en la subasta"*.[16]

Conforme a las disposiciones estatutarias anteriormente citadas, el 20 de diciembre de 2021, el Municipio Autónomo de Canóvanas aprobó su *Reglamento de Compras y Subastas del Municipio de Canóvanas* (*Reglamento de Compras y Subastas*) mediante la Ordenanza Núm. 12, SERIE 2021-2022.[17] En su Artículo IX, denominado Procedimientos Iniciales de Subasta, dispone sobre los trámites que conlleva efectuar la subasta: aviso de subasta, normas aplicables a los pliegos de condiciones y especificaciones, documentos adicionales requeridos a los licitadores, reunión pre-subasta, presentación y recibo de oferta de los licitadores, procedimiento de apertura de los pliegos de subastas; y subastas generales. El Artículo X sobre Adjudicación de la Subasta, Sección 2, en lo pertinente, expresa: *"la Junta procederá a verificar en las ofertas susceptibles de ser evaluadas, cuáles han cumplido con las*

---

[14] Secc. 10, Cap. VIII, Parte II, *Reglamento Núm. 8873* (Énfasis nuestro).
[15] Secc. 10, Cap. VIII, Parte II, *Reglamento Núm. 8873.*
[16] *Íd.*
[17] Este *Reglamento de Compras y Subastas* derogó el *Reglamento de Compras y Subastas del Municipio Autónomo de Canóvanas* aprobado el 10 de junio de 2016.

*especificaciones y condiciones solicitadas en la subasta, de acuerdo al informe presentado por el personal del Municipio Autónomo de Canóvanas que evaluó los mismos".*

En consideración a todo lo anterior, los Municipios pueden adjudicar la subasta al postor que consideren más apropiado, aun cuando no sea el más bajo, si con ello se sirve al interés público. No existe una regla inflexible en el sentido de que la subasta se debe adjudicar al postor más bajo. A tenor con esa interpretación, en los casos de subastas, la revisión judicial se circunscribe a determinar si la adjudicación al licitador agraciado es razonable y se sostiene con la evidencia sustancial que obra en el expediente de subasta.[18]

### *- B - Revisión Judicial de Adjudicaciones de Subastas Municipales*

El Art. 4.002 de la Ley Núm. 201-2003, según enmendada, conocida como *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico* implanta la competencia del Tribunal de Apelaciones, disponiendo que podrá conocer de los siguientes asuntos: (a) recursos de apelación de toda sentencia final dictada por el Tribunal de Primera Instancia; (b) recursos de *certiorari* expedido a su discreción de cualquier resolución u orden dictada por el Tribunal de Primera Instancia; (c) recursos de revisión judicial de las decisiones finales de los organismos y agencias administrativas; (d) recursos de *mandamus y habeas corpus;* y (e) **cualquier otro asunto determinado por ley especial.**[19]

Ante ello, son los tribunales quienes tienen la obligación de asegurar que las entidades públicas cumplan con las disposiciones normativas aplicables, los reglamentos y procedimientos adoptados para regir la celebración de subastas para la adquisición de bienes y servicios del sector privado. También deben asegurar que en estos procesos se trate de forma

---

[18] *Caribbean Communication v. Pol. de P.R.*, 176 DPR 978, 1006 (2009).
[19] Art. 4.002 de la Ley Núm. 201-2003, 4 LPRA sec. 24 (y).

justa e igualitaria a todos los licitadores al momento de recibir y evaluar sus propuestas, así como de adjudicar la subasta.[20]

El *Código Municipal de Puerto Rico* concierta que la notificación deberá incluir: (1) el derecho de la(s) parte(s) afectada(s) de acudir ante el Tribunal de Apelaciones para la revisión judicial; (2) el término para apelar la decisión; (3) la fecha de archivo en autos de la copia de la notificación, y; (4) a partir de qué fecha comenzará a transcurrir el término para recurrir en revisión.[21] Dispone, además, que *"[l]a adjudicación de una subasta será notificada a todos los licitadores certificando el envío de dicha adjudicación mediante correo certificado con acuse de recibo. [...]* ***La Junta de Subasta notificará a los licitadores no agraciados las razones por las cuales no se le adjudicó la subasta****. Toda adjudicación tendrá que ser notificada a cada uno de los licitadores, apercibiéndolos del término jurisdiccional de diez (10) días para solicitar revisión judicial de la adjudicación ante el Tribunal de Apelaciones, de conformidad con el Artículo 1.050 de este Código"*.[22]

El *Código Municipal de Puerto Rico*, además, instituye el derecho de revisión judicial de los licitadores o participantes de estos procesos.[23] En particular, expone que *"el Tribunal de Apelaciones revisará, el acuerdo final o adjudicación de la Junta de Subastas, el cual se notificará por escrito y mediante copia por correo escrito regular y certificado a la(s) parte(s) afectada(s). La solicitud de revisión se instará dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la copia de la notificación del acuerdo final o adjudicación"*.[24]

Por otra parte, la Sec. 13 del Capítulo VIII, Parte II, del *Reglamento Núm. 8873, supra,* expresa:

> (2) La decisión final de la Junta se notificará por escrito y por correo certificado con acuse de recibo, a todos los licitadores que participaron en la subasta y será firmada por el Presidente de la

---

[20] *RBR Const., S.E. v. A.C.*, 149 DPR 836, 856 (1999).
[21] Art. 1.050 de la Ley 107-2020.
[22] Art. 2.040 de la Ley 107-2020 (Énfasis nuestro).
[23] Véanse, Art. 1.050 de la Ley Núm. 107-2020; *PR Eco Park et al. v. Mun. de Yauco, supra.* págs. 533- 534 (2019).
[24] Art. 1.050 de la Ley Núm. 107-2020.

Junta. No se adelantará a licitador alguno, información oficial sobre los resultados de la adjudicación, hasta tanto la Junta le haya impartido su aprobación final.

(3) La notificación de adjudicación o la determinación final de la Junta, que se enviará a todos los licitadores que participaron en la subasta, debe contener la siguiente información:

a) nombre de los licitadores;

b) **síntesis de las propuestas sometidas;**

c) **factores o criterios que se tomaron en cuenta para adjudicar la subasta y razones para no adjudicar a los licitadores perdidosos;**

d) derecho a solicitar revisión judicial de la adjudicación o acuerdo final, ante el (T)ribunal de Apelaciones, y el término para ello, que es dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la notificación de adjudicación;

e) fecha de archivo en auto de la copia de la notificación y la fecha a partir de la cual comenzará a transcurrir el término para impugnar la subasta ante el Tribunal de Apelaciones.

(4) Ante la posibilidad de alguna impugnación de una adjudicación en una subasta, no se formalizará contrato alguno hasta tanto transcurran diez (10) días contados desde el depósito en el correo de la notificación del acuerdo final o adjudicación.

La anterior prohibición aplicará aún en los casos de subastas en las cuales participó un solo licitador.

Transcurrido el término de los diez (10) días de la notificación o adjudicación, el municipio otorgará el contrato escrito, con los requisitos de Ley aplicables y conforme el Capítulo de Contratos Municipales de este Reglamento. (Énfasis nuestro)

El Artículo XIII del *Reglamento de Compras y Subastas* se enuncia que:

"[l]a determinación final de la Junta se notificará por escrito y por correo certificado con acuse de recibo, a todos los licitadores que participaron en la subasta y será firmada por el Presidente de la Junta, o por la Secretaria de la Junta en ausencia de este. No se adelantará a licitador alguno, información oficial sobre los resultados de la adjudicación, hasta tanto la Junta le haya impartido su aprobación final. La notificación de adjudicación o la determinación final de la Junta, que se enviará a todos los licitadores que participaron en la subasta, deberá contener la siguiente información: A. El Nombre de los licitadores. B. Una síntesis de las propuestas sometidas. C. Los factores o criterios que se tomaron en cuenta para adjudicar la subastas y razones para no adjudicar a los licitadores perdidosos. D. Advertencia sobre el derecho a solicitar revisión judicial de la adjudicación o acuerdo final, ante el Tribunal de Apelaciones, dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la notificación de adjudicación".

Nuestro más alto foro ha reconocido que el derecho a cuestionar una adjudicación o determinación final, mediante el mecanismo de revisión judicial, es parte del debido proceso de ley.[25] Ante ello, **resulta**

---

[25] *Puerto Rico Asphalt v. Junta, supra; PR Eco Park et al. v. Mun. de Yauco, supra.*

**indispensable que se notifique adecuadamente a todas las partes cobijadas por ese derecho.**[26] Si no se cumpliera con estas garantías mínimas, el derecho a revisar la determinación de la Junta de Subastas sería ineficaz ya que el propósito de la notificación es que los licitadores perdidosos tengan la oportunidad de solicitar revisión judicial dentro del término jurisdiccional aplicable.[27]

La Máxima Curia ha explicado que la exigencia de fundamentar la adjudicación de una subasta permite al Tribunal cumplir con su obligación constitucional de asegurar que el derecho a obtener la revisión judicial de una decisión sea efectivo.[28] Detalla, además, que una notificación fundada permite que los tribunales puedan revisar efectivamente los fundamentos para determinar si la adjudicación realizada por la Junta ha sido arbitraria, caprichosa o irrazonable, más aún en el caso de subastas públicas, en virtud de las cuales se desembolsan fondos públicos.[29] **Si la parte adversamente afectada por la determinación desconoce los fundamentos que propiciaron su decisión,** *el trámite de la revisión judicial de la determinación administrativa se convertiría en un ejercicio fútil.*[30] En este sentido, *no basta con informar la disponibilidad y el plazo para solicitar la reconsideración y la revisión.*[31]

Respecto al contenido de la notificación de la adjudicación de la subasta, tanto la normativa aplicable como las opiniones emitidas por nuestro Tribunal Supremo han sido enfáticas y claras en lo que debe incluir para que satisfaga las exigencias mínimas del debido proceso de ley y facilite la revisión judicial. En el caso *L.P.C.& D., Inc. v. A.C.*, ante una notificación de una adjudicación de subasta de una agencia administrativa en la cual se advirtió de la disponibilidad y el término para solicitar reconsideración, **pero**

---

[26] *Íd.* (Énfasis nuestro).
[27] *Íd.*
[28] *Íd.,* haciendo referencia a *L.P.C. & D, Inc. v. A.C.*, 149 DPR 869, 877-888 (1999).
[29] *Íd.,* en la pág. 10; *Pta. Arenas Concrete, Inc. v. J. Subastas*, 153 DPR 733, 742 (2001).
[30] *Puerto Rico Asphalt v. Junta, supra*; *L.P.C.& D., Inc. v. A.C., supra,* pág. 878. (Énfasis provisto).
[31] *Íd.*

**no se fundamentó la determinación**, por primera vez el Tribunal Supremo implantó que una determinación administrativa tenía que estar fundamentada, pues una parte necesita conocer los motivos de la agencia para poder ejercer su derecho a la revisión judicial.[32] Así, dispuso que una notificación sobre adjudicación de subasta, aunque sea de forma sumaria y sucinta, debía incluir: (1) los nombres de los licitadores en la subasta y una síntesis de sus propuestas; (2) los factores o criterios que se tomaron en cuenta para adjudicar la subasta; (3) los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos, y; (4) la disponibilidad y el plazo para solicitar la reconsideración y la revisión judicial.[33] Posteriormente, en *Pta. Arenas Concrete, Inc. v. J. Subastas*, se hizo extensiva dicha norma a las subastas celebradas por los municipios.[34]

El Tribunal Supremo ha establecido claramente los efectos nocivos de una notificación defectuosa. En particular, ha precisado que *"una notificación defectuosa puede tener el efecto irremediable de afectar el derecho de una parte a cuestionar la adjudicación de subasta; también el de privar de jurisdicción al foro revisor para entender el asunto impugnado"*.[35] Si la notificación en cuestión adolece de los requisitos establecidos por la legislación y reglamentación, procede devolver el asunto para que se emita una notificación que cumpla con ello.[36] Por ende, *"[s]ólo a partir de la notificación así requerida es que comenzará a transcurrir el término para acudir en revisión judicial"*.[37]

Esta exigencia hace efectivo el ejercicio del derecho a solicitar revisión judicial de las adjudicaciones de subasta, toda vez que —al conocer el perjudicado las razones que tuvo el ente administrativo o municipal para su

---

[32] 149 DPR 869, 878- 879.  (1999).
[33] *Íd.*, pág. 879.
[34] *Pta. Arenas Concrete, Inc. v. J. Subastas, supra*, págs. 743-44.
[35] *Puerto Rico Asphalt v. Junta, supra*; *PR Eco Park et al. v. Mun. de Yauco, supra*; *IM Winner, Inc. v. Mun. de Guayanilla*, 151 DPR 30, 38 (2000).
[36] *Puerto Rico Asphalt v. Junta, supra*; *Pta. Arenas Concrete, Inc. v. J. Subastas, supra,* pág. 744; *L.P.C.& D., Inc. v. A.C., supra,* pág. 880.
[37] *Pta. Arenas Concrete, Inc. v. J. Subastas, supra*, pág. 38.

determinación— este contará con los fundamentos necesarios para cuestionarla, y los tribunales estaremos aptos para ejercer nuestra función revisora.[38]

Al ejercer la función revisora en casos de subastas, los tribunales apelativos mostrarán gran consideración y deferencia a la adjudicación administrativa por razón de su experiencia y conocimiento especializado. Empero, tales determinaciones no gozan de deferencia cuando no son razonables, hay ausencia de prueba adecuada para sostenerla, se cometió un error manifiesto en su apreciación o tiene visos de arbitrariedad.[39] Es decir, tanto las adjudicaciones de subastas como las decisiones administrativas tienen a su favor una presunción de legalidad y corrección que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla.[40] La cuestión debe decidirse a la luz del interés público y la determinación debe ser sostenida si cumple con el criterio de razonabilidad.[41]

- IV -

PROFESSIONAL ASPHALT solicita la revisión de la adjudicación de la *Subasta General Núm. 17 Serie 2024-2025* a favor de MIGUELITO ASPHALT por entender que erró la JUNTA DE SUBASTAS al emitir una notificación sobre adjudicación de la subasta inadecuada que no cumple con los requisitos de ley y reglamento, así como al adjudicar a un postor que no es el más bajo, sin justificación alguna. Expuso, además, que la comunicación no hace mención de la cantidad por la cual se adjudicó a dicho licitador, ni las propuestas presentadas, ni los factores que movieron la decisión de la JUNTA DE SUBASTAS.

Examinada la **segunda notificación** sobre la adjudicación de la subasta, nos hemos percatado que la misma aun adolece de cierta

---

[38] *Torres Prods. v. Junta Mun. Aguadilla*, 169 DPR 886, 898 (2007); *L.P.C. & D., Inc. v. A.C., supra*, pág. 879.

[39] *Torres Prods. v. Junta Mun. Aguadilla, supra.*

[40] *Caribbean Communication v. Pol. de P.R., supra.*

[41] *Caribbean Communication v. Pol. de P.R., supra*, pág. 978 y 1006; *A.E.E. v. Maxon*, 163 DPR 434 (2004); *RBR Const. SE v. AC, supra*, págs. 836 y 856-857.

información: *incluir los factores o criterios que se tomaron en cuenta para adjudicar la subasta; y las razones para no adjudicar a los licitadores perdidosos.* Ello es imprescindible para que todas las partes adversamente afectadas por la adjudicación de la subasta puedan conocer los motivos o fundamentos que sustentan la decisión de la JUNTA DE SUBASTAS. Así como, para garantizarles el debido proceso de ley.

Ante el hecho de que la **segunda notificación** carece de todos los requisitos implantados por la legislación y reglamentación vigente, procede devolver este asunto a la consideración de la JUNTA DE SUBASTAS. Ello a los fines de que emita una notificación que cumpla con todos los requerimientos refrendados. Toda vez que la antedicha **segunda notificación** es defectuosa, se nos ha privado de jurisdicción para entender este recurso sobre revisión judicial.

- V -

Por los fundamentos antes expuestos, y en conformidad con la Regla 83 (C) del Reglamento del Tribunal de Apelaciones, *desestimamos* por falta de *jurisdicción* la *Solicitud de Revisión Judicial* interpuesta el 13 de septiembre de 2024 por PROFESSIONAL ASPHALT.[42]

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[42] 4 LPRA Ap. XXII-B. La Regla 83 (C) del Reglamento del Tribunal de Apelaciones faculta a este Tribunal para que, a iniciativa propia, desestime un recurso de apelación o deniegue un auto discrecional por cualquiera de los motivos consignados en el inciso (B). Dicho inciso lee: *"(B) Una parte podrá solicitar en cualquier momento la desestimación de un recurso por los motivos siguientes: (1) que el Tribunal de Apelaciones carece de jurisdicción; (2) que el recurso fue presentado fuera del término de cumplimiento estricto dispuesto por ley sin que exista justa causa para ello; (3) que no se ha presentado o proseguido con diligencia o de buena fe; (4) que el recurso es frívolo y surge claramente que no se ha presentado una controversia sustancial o que ha sido sido interpuesto para demorar los procedimientos; o (5) que el recurso se ha convertido en académico".*